IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 03, 2013

## CHRISTOPHER RODNEY BUTLER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C12243    Roy B. Morgan, Jr., Judge**

**No. W2013-01245-CCA-R3-PC  -  Filed April 29, 2014**

Petitioner, Christopher Rodney Butler, appeals the dismissal of his petition for post-conviction relief in which he alleged ineffective assistance of counsel at trial. More specifically he contends that (1) trial counsel failed to "solicit" the testimony of Albert Sweat; (2) trial counsel failed to depose the State's witnesses prior to trial; and (3) trial counsel failed to obtain video surveillance footage from the cameras at the "Mix Factory in Jackson, Tennessee showing that he had been approached by a young black man, who drove him to the purported crime scene." After a thorough review of the record, we conclude that Petitioner has failed to show that his trial counsel rendered ineffective assistance of counsel, and we accordingly affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, and JEFFREY S. BIVINS, JJ., joined.

Joseph T. Howell, Jackson, Tennessee, (on appeal); and Joseph R. Taggart, Jackson, Tennessee, (at trial), for the appellant, Christopher Rodney Butler.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle L. Consiglio-Young, Assistant Attorney General; James G. Woodall, District Attorney General; and Rolf Hazlehurst, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

A Madison County Grand Jury returned an indictment against Petitioner charging him with solicitation of a minor to commit rape of a child; driving under the influence of an intoxicant (DUI), fourth offense; indecent exposure; and resisting arrest. Following a jury trial, he was convicted of solicitation of a minor to commit rape of a child, a Class B felony; DUI, fourth offense, a Class E felony; and indecent exposure, a Class B misdemeanor. He was sentenced to concurrent sentences of ten years, two years, and six months, respectively. *State v. Christopher Rodney Butler*, No. W2010-01729-CCA-R3-CD, 2011 WL 3276644 (Tenn. Crim. App. July 25, 2011).

The following facts were set forth by this Court on direct appeal:

> The record reflects that the Madison County Grand Jury indicted the appellant for solicitation of a minor to commit rape of a child; DUI, fourth offense; indecent exposure; and resisting arrest. At trial, fourteen-year-old Shundarion Taylor testified that on July 3, 2009, he was at the home of the victim's grandmother, Marilyn Reddick, "popping fireworks." Taylor, his brother, and the victim were outside, and the victim was sitting on the porch. He said that "this orange-ish and black truck pulled up in the front yard . . . asking if we had a little girl." Taylor said he approached the truck and asked, "What did ya'll say?" He said the men in the truck said, "Can we have the girl?" The children went into the house and told Reddick, and she told Taylor to keep the men occupied until the police arrived. Taylor went back outside, and the driver of the truck said, "[C]an [I] have the girl 'til 2:00 so she can suck [my] dick." The driver offered one hundred fifty dollars for the victim. Taylor testified that he tried to stall the driver by telling him that the victim would come out soon. He said that the passenger wanted to leave and that the two men got into a "little fight." He said that when the passenger got out of the truck to use the bathroom, the driver "lifted up his dick, and then he tried to show us and then we all turned our head." Taylor said he saw the driver's penis, and he identified the appellant in court as the driver.
>
> On cross-examination, Taylor testified that the truck arrived about 11:00 p.m. and that the victim was his cousin. Street lights were present, and Taylor could see well. He said he was about ten feet from the truck and could see into the truck. The victim was on the porch, and the truck was

about twelve feet from the porch. The porch light was not turned on. When asked if he noticed anything unusual about the appellant, Taylor said, "His clothes were down. His leg fell off. His breath was stinky."

Fifteen-year-old Cameron Reddick testified that on the night of July 3, 2009, he was at his home when some men pulled up in a truck and said they wanted "'the girl for some money.'" He and the other children went into the house and told his grandmother. He said his grandmother told them "to go along with it 'til the police come." He stated that the driver of the truck said, "'I want the girl to suck my dick until 2:00 in the morning.'" He said that Shundarion Taylor had the most interaction with the driver and that he did not see the driver expose himself. The police arrived and arrested the driver.

On cross-examination, Reddick testified that he was fourteen years old at the time of the incident and that the victim, his cousin, was eleven. A child named "Ty" also was present. Reddick said that the victim was sitting on the porch and that he did not know how far the truck was from the porch. Defense counsel asked Reddick, "Is it as far, say, from you to this wall right here?" Reddick answered, "That's about it right there." Defense counsel estimated the distance to be twenty-five to thirty feet. Reddick said that the area was dark, that the appellant did not ask the victim's age, and that no one revealed the victim's age to the appellant.

The eleven-year-victim testified that on the night of July 3, 2009, she was at her grandmother's house. The victim, Cameron Reddick, Shundarion Taylor, and "Ty" went outside to shoot fireworks. She said that two white men pulled up in a red truck and that one of the men told her "to go put on a bikini and suck his 'til 2:00 in the morning." The victim ran into the house and started crying. Her grandmother also started crying, called 911, and told Reddick and Taylor to go outside and talk with the men until the police arrived.

On cross-examination, the victim testified that she was sitting on the porch swing when the truck arrived and was ten to fifteen feet from the truck. The windows were down, and she could see into the truck. The men did not speak to her; Taylor and Reddick told her what the men said. The passenger got out of the truck and urinated on the side of the vehicle. She did not see the driver get out of the truck.

Marilyn Reddick testified that she lived on Honey Bear Drive in Jackson. On July 3, 2009, her grandson and his friend came into the house and reported that two men were outside and wanted to have sex with the victim. She said that she telephoned the police and that the police arrested the men. She said that Honey Bear Drive was a lighted street and that she did not remember if her porch light was on.

Officer Michael Heath Thompson of the Jackson Police Department testified that about 10:45 p.m. on July 3, 2009, he and other officers were dispatched to Marilyn Reddick's home. When they arrived, they saw an orange Dodge truck with two men inside. The officers ordered the men to get out of the truck, but they refused. Officer Thompson and another officer forcibly removed the driver. He said the driver's pants were "undone" and "were down to probably like thigh-knee region." He said "a small girl's doll head," a "female children's Bible," and some "cap gun rounds" were found in the truck. The officers also recovered a one-hundred-dollar bill from the driver's hand. He said that the driver's eyes were "hazy, a little glassy," that the driver smelled of alcohol, and that the driver was "fidgety, . . . just kind of zoned." He identified the appellant in court as the driver.

On cross-examination, Officer Thompson testified that the appellant appeared to be intoxicated. However, the appellant was coherent.

Officer Ron Pugh of the Jackson Police Department testified that he responded to Marilyn Reddick's home on July 3, 2009. Officers found the appellant and another man sitting inside a truck parked at the house, and the appellant's pants were pulled down around his thighs. Officer Pugh and Officer Thompson had to pull the appellant from the truck. When they got the appellant onto the ground and began to handcuff him, they found a one hundred-dollar bill in his hand. Officer Pugh said that the appellant was "obviously intoxicated" and that the appellant "said a few things that were pretty incoherent."

Paul Butler, Sr., the appellant's father, testified for the appellant that the appellant had an eight-year-old daughter. He described the appellant's injuries from a car accident, stating that the appellant "got hurt real bad, . . . split his skull open, . . . his pelvis . . . is just metal, and, you know, he lost his leg." Butler said the appellant used "a lot of medication," alcohol, and crack cocaine. He said the appellant was a good father, but he

acknowledged that he had custody of the appellant's daughter. He said that he owned the orange truck and that the appellant's daughter had toys and other personal property in the truck.

The thirty-six-year-old appellant testified that on July 3, 2009, he went to a club called the Mix Factory. He said he and his friend were sitting outside the club in an orange truck when a black man approached and asked if he wanted to buy cocaine. The man offered to drive him to get the cocaine, and he agreed. He said that the man got into the truck and that the man drove "down there, in some area up in there." The man got out of the truck and went to get the cocaine while the appellant waited. Suddenly, the police appeared and pulled the appellant out of the truck. He said that he was wearing sweat pants, that his artificial leg came off when the officers pulled him from the vehicle, and that the ejection of his prosthetic leg pulled his pants away from his body.

The appellant testified that he was "really messed up" on alcohol and that the black man drove the truck to where the cocaine could be purchased because he was too intoxicated to drive. He said he intended to buy an "eight ball" of cocaine for one hundred or one hundred fifty dollars. He denied exposing himself, seeing a girl at the location where the truck was parked, or asking for oral sex from the girl.

Shundarion Taylor testified on rebuttal for the State. He stated that no black male was in the orange truck when it arrived on July 3, 2009.

*State v. Christopher Rodney Butler*, 2011 WL 3276644 at *1-3.

## II. Post-Conviction Hearing

Petitioner testified that trial counsel was appointed to represent him. He alleged that trial counsel failed to investigate "options" that would have been helpful to his defense. Petitioner felt that Albert Sweat should have been able to testify "to the fact that we were looking [for] drugs and that we were driven to that neighborhood by a young black man who offered to sell us some drugs." Petitioner said that Mr. Sweat would have testified that Defendant wanted to buy drugs, not have sexual relations with an underage girl. Petitioner testified that by trial counsel "not interviewing and using Mr. Sweat as a witness, my defense was severely for justice [sic]." He did not recall if he and trial counsel discussed calling Mr. Sweat as a witness.

-5-

Petitioner testified that trial counsel was ineffective for failing to interview and depose the state witnesses prior to trial. He said:

> Had he performed such disposition [sic], he would have identified the following: That it was only the two older boys, Darian [sic] Taylor, age 14, and Cameron Reddick, age 15, who had made up accusations against me. The other witnesses only heard through hearsay what the two older boys were saying. Page 11, Page 37, Line 6 through 9, that Shannon Cameron [sic] had told her that I had said something, therefore, she never had - -

> * * *

> That Shundarian Taylor and Cameron Reddick and everything, that - - 'cause Kelson [sic] Reddick only heard through hearsay, you know, what the two older boys was saying, told her what I supposedly had said. So she never actually herself - - she said that she heard it through them. Whatever, you know, she said she heard from me, she didn't actually hear it from me.

Petitioner testified that trial counsel should have obtained footage from the video cameras located at the Mix Factory in Jackson. Petitioner alleged that the video footage would have shown that he was approached by a young black male who got into Petitioner's truck and drove him to the residence. Petitioner claimed that the evidence would have been relevant to his defense to show that someone else drove him to the residence to buy "drugs and everything." He said, "I didn't go up there for no underage girl."

Trial counsel testified that he requested discovery from the district attorney general's office in Petitioner's case. He read all of the police officers' statements and all of the other written statements. Trial counsel spoke with Petitioner on numerous occasions about the events surrounding the case, and he also met with Petitioner's father. Trial counsel spoke with counsel for Petitioner's co-defendant, Albert Sweat, who indicated that Mr. Sweat was passed out at the time of the offenses and would not be able to provide any assistance. That was also Mr. Sweat's theory of defense in the case.

Trial counsel testified that Petitioner told him that Petitioner encountered an individual in the parking lot of the Mix Factory in Jackson on the night of the offenses. He said that "there was some negotiation to purchase cocaine." When asked if Mr. Sweat could have been called to address the issue of purchasing cocaine trial counsel explained that the State's evidence against Defendant was "very overwhelming about establishing the charges." Trial counsel did not feel that "it would be in [Petitioner's] best interest to enter into any kind of theories about cocaine." He testified: "I felt like his best shot was going to be to defeat

-6-

an essential element of the solicitation crime which indicated that he would not have known the victim to be less than 18 years old." Trial counsel and Petitioner discussed the issue on "numerous occasions." When asked if Petitioner agreed with the defense, trial counsel testified: "Actually [Petitioner] was not that involved in his defense. He didn't have a lot of input."

Trial counsel testified that he did not interview or depose the State's witnesses because he did not want to give them an opportunity "to get together and mesh their stories." He said:

> Actually I thought that their inconsistencies would be in [Petitioner's] interest at trial to at least point out to the jury the fallibility of eyewitnesses and also to point out to the Court the conditions that night. It was dark. There were different stories about how far [Petitioner] might have been from the alleged victim. I actually thought it was going to be in his best interest.

Trial counsel testified that he called the Mix Factory to inquire about video footage. He said that there were no video cameras in the parking lot, and he did not ask whether there were any cameras on the side of the building because, according to Petitioner, "the negotiations took place - - the alleged negotiations for this cocaine purchase occurred out in the area of his truck."

## III. Analysis

Petitioner contends that the post-conviction court erred in denying his petition for post-conviction relief. He argues that trial counsel was ineffective for failing to: (1) "solicit" the testimony of Albert Sweat; (2) depose the State's witnesses prior to trial; and (3) obtain video surveillance footage from the cameras at the "Mix Factory in Jackson, Tennessee showing that he had been approached by a young black man, who drove him to the purported crime scene." We disagree.

In a claim for post-conviction relief, the petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103. Petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn.Code Ann. § 40-30-110(f); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). The post-conviction court's factual findings "are conclusive on appeal unless the evidence preponderates against those findings." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Upon review, this court will not reweigh or reevaluate the evidence below, and all questions concerning the credibility of witnesses, the weight and

value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial court, not this court. *Momon v. State*, 18 S.W.3d 152,156 (Tenn. 1999).

On appeal, the post-conviction court's findings of fact are entitled to substantial deference and are given the weight of a jury verdict. They are conclusive unless the evidence preponderates against them. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). A post-conviction court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001). Our supreme court has "determined that the issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact, . . . thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief based on the alleged ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient, and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

Concerning Petitioner's ineffective assistance of counsel claims, the post-conviction court made the following findings:

> The Court notes first of all that the burden of proof is by clear and convincing evidence. Again, I find in this particular case that the Petitioner makes claims about what his lawyer, [    ], should have done, and particularly claiming his attorney at the time of the criminal case failed to investigate defense options, particularly potential witnesses and particularly Mr. Albert Sweat. The Petitioner testified he does not remember if there was discussion about Mr. Albert Sweat with his attorney. He also claims that the Petitioner's attorney, [    ], failed to interview certain witnesses of the State and take their

-8-

depositions and also that he failed to get video footage of the parking lot from the Mix Factory, which is the local bar that the Petitioner claims he was at before he went to the location of the incident for which he's been convicted.

The Court finds specifically in failing to carry the burden of proof today by clear and convincing evidence, the Petitioner offered no proof from any witnesses today. There's no proof that Petitioner was denied critical evidence which prejudiced him based upon any of the claims he's made. The case law appears to be clear that the general rule is that the Petitioner would have to present the testimony of any witness that he contends should have been called during his underlying trial, and that's just not happened today. All I've heard from is the Petitioner, and he's not real clear on what he remembers. Also in failing to carry the burden of proof as to the videotapes, it's been very clear from [trial counsel] that there were no tapes available, and he made that call, and the parking lot was the critical location at the Mix Factory and there were no tapes to produce. Also of record are the trial exhibits marked Exhibits 1, 2 and 3. I have to listen and judge the credibility of the witnesses today, and I've done that in making my decision. The Court finds that specifically as to those issues raised through the testimony in the petition the burden has not been carried for the reasons stated.

The record fully supports the post-conviction court's findings. As to trial counsel's failure to call Mr. Sweat as a witness at trial, we note that Petitioner did not call Mr. Sweat to testify at the post-conviction hearing. It has long been held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This Court may not speculate as to their testimony. *Id.* Furthermore, trial counsel testified that he spoke with Mr. Sweat's trial counsel, who indicated that Mr. Sweat was passed out at the time of the offenses and would not be able to provide any assistance. Petitioner is not entitled to any relief on this issue.

Concerning trial counsel's failure to depose the State's witnesses prior to trial, again Petitioner did not call any of the witnesses to testify at the post-conviction hearing. Additionally, trial counsel made a tactical decision not to interview the State's witnesses because he did not want to give them an opportunity "to get together and mesh their stories." Trial counsel said:

Actually I thought that their inconsistencies would be in [Petitioner's] interest at trial to at least point out to the jury the fallibility of eyewitnesses and also to point out to the Court the conditions that night. It was dark. There were different stories about how far [Petitioner] might have been from the alleged victim. I actually thought it was going to be in his best interest.

It is not the function of this court to "second guess" tactical and strategic choices pertaining to defense matters if the choices are informed ones based upon adequate preparation. *See Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995); *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982); and *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Petitioner is not entitled to relief on this issue.

Lastly, as to trial counsel's failure to obtain video recordings from the parking lot of the Mix Factory in Jackson, there is absolutely no proof that such recordings exist. Trial counsel testified that he called the Mix Factory to inquire about video footage. He said that there were no video cameras in the parking lot, and he did not ask whether there were any cameras on the side of the building because Petitioner did not indicate that anything took place in that area. Petitioner produced no video recordings at the post-conviction hearing, and no evidence that any video recordings ever existed. Trial counsel cannot be said to be ineffective for failing to obtain evidence that does not exist. Moreover, Petitioner has not in any way demonstrated that this evidence would have even remotely affected the outcome of his case. He asserted that the video footage would have shown that he was approached by a young black male who got into Petitioner's truck and drove him to the victim's residence. Petitioner further claimed that the evidence would have been relevant to his defense to show that someone else drove him to the residence to buy "drugs [cocaine] and everything." Trial counsel noted at the post-conviction hearing that he did not feel that "it would be in [Petitioner's] best interest to enter into any kind of theories about cocaine." Again, Petitioner is not entitled to any relief on this issue.

Based on the record, we conclude that Petitioner has failed to show by clear and convincing evidence that he received deficient representation by counsel at trial or that he was prejudiced by any alleged deficiencies of counsel. Petitioner is not entitled to relief in this appeal. The judgment of the trial court is affirmed.

THOMAS T. WOODALL, JUDGE